UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-387-GWU

DARCY MARIE TALBERT, PLAINTIFF,

VS.                **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

    Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-387 Darcy Marie Talbert

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

08-387 Darcy Marie Talbert

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Darcy Marie Talbert, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, myofascial pain/fibromyalgia, bilateral carpal tunnel syndrome and an affective disorder. (Tr. 12). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a file clerk, and accordingly was not entitled to benefits. (Tr. 15-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, with the ability to stand or walk a total of six hours and to sit for six hours in an eight-hour day, and also had the following additional restrictions. She: (1) could no more than "frequently" push or pull with both the upper and lower extremities; (2) could never climb ladders or ropes or crawl; (3) could occasionally stoop, kneel, crouch, or climb ramps or stairs; (4) could perform no more than "frequent" handling, defined as seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands; and (5) avoid concentrated exposure to full body vibration and avoid hazards such as unprotected

heights and dangerous machinery. (Tr. 55). The ALJ also specified that the person had the mental capacity to understand, remember, and carry out simple and detailed work instructions, sustain attention and concentration for extended periods of two-hour segments in an eight-hour day, adequately relate to coworkers and supervisors in an object-focused work environment, and adapt to routine changes in a work environment not highly pressured. (Tr. 55-6). The VE responded that such a person would be able to perform the plaintiff's past relevant work as a filing clerk. (Tr. 56). In the alternative, she identified other light level jobs that the individual could perform, and provided the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to sarcoidosis, fibromyalgia, carpal tunnel syndrome in both hands, high blood pressure, and depression. (Tr. 126).

Dr. James C. Owen conducted a consultative physical examination of the plaintiff on September 19, 2007. (Tr. 316). He noted that the plaintiff was crying during the evaluation and had "obvious severe depression." (Tr. 317). Physically, he found somewhat elevated blood pressure, an apparently limited grip strength, and an ability to perform three quarters of a squat with complaints of pain in the knees and hips. (Tr. 318). Forward flexion of the spine was limited to 70 degrees

with lateral bending of 10 degrees both to the left and the right "with more pain." There were "positive trigger points all over her back." (Id.). She was able to get on and off the examination table without significant difficulty, had a normal gait and station, and negative Phalen's and Tinel's signs, although her wrist range of motion was mildly diminished. (Id.). A pulmonary function study showed an FEV1 115 percent of predicted and was considered normal. (Tr. 318, 322). Dr. Owen opined that the plaintiff's worst problem was her depression and she clearly needed to be reviewed by a psychiatrist, but still concluded that "she would have severe difficulty lifting, handling, [and] carrying objects." (Tr. 318).

A state agency physician, Dr. David Swan, reviewed the evidence on October 11, 2007. He stated that the plaintiff's records contained no appropriate evaluation to document fibromyalgia, nor was there a careful assessment to eliminate possible connective tissue disorder. (Tr. 350-1). He felt that Dr. Owen's restrictions were not specific and gave them little weight. (Tr. 355). He noted that the plaintiff's diagnosis of sarcoidosis had not affected her pulmonary function and was not considered "severe." (Tr. 356). Nor did he feel that the plaintiff's hypertension was "severe," because there was no evidence of end organ damage. (Id.). He concluded that the plaintiff was capable of "light" level exertion with no more than "frequent" pushing and pulling with the upper and lower extremities and "frequent" gross manipulation, and could occasionally stoop, crouch, and climb ladders, ropes,

and scaffolds.  (Tr. 350-6).  Another state agency physician, Dr. Timothy Gregg, agreed with Dr. Swan's opinion on December 11, 2007.  (Tr. 408-14).

Meanwhile, on October 31, 2007, the plaintiff began treatment with Dr. Jennifer Beck of the Lexington-Fayette County Health Department.  (Tr. 431).  The plaintiff was prescribed the medications Cymbalta and Lyrica for both depression and fibromyalgia, and was also given additional medications for fibromyalgia.  She was provided with an inhaler for shortness of breath due to sarcoidosis.  (Id.).  After two more visits and a referral to a pulmonologist, Dr. Beck noted on a December 3, 2007 visit that the plaintiff had 15 out of a possible 18 trigger points, and added an additional medication for myoclonus.  (Tr. 425).  The plaintiff reported on December 18 that the medication seemed to help but her pain became worse again the previous week.  (Tr. 423).  Dr. Beck decided to refer her patient to a rheumatologist. (Id.).

On December 20, Dr. Beck completed a functional capacity assessment limiting the plaintiff to lifting 10 pounds occasionally and frequently, standing and/or walking less than two hours in an eight-hour work day, and sitting about six hours. Like the state agency reviewers, she indicated that the plaintiff would have a limited ability to push and pull in both the upper and lower extremities.  She felt, however, that the plaintiff could "never" climb, balance, kneel, or crawl, and could occasionally crouch and stoop, would have a limited ability to reach overhead but no limitations

on gross or fine manipulation.  She needed to avoid temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, and gases.  (Tr. 438-41).  The medical and clinical findings cited for the restrictions were shortness of breath due to sarcoidosis, significant muscle pain, and her size.  (Id.).[1]

Subsequently, the plaintiff was reevaluated by a pulmonologist, Dr. John R. White, who had treated her sarcoidosis in the past.  Although she complained of worsening shortness of breath, and a chest x-ray showed significant adenopathy with calcifications in the lungs, there was no change from her examination the previous year, and pulmonary function testing showed normal spirometry, normal lung functions, and an improved diffusion capacity compared to her earlier study.  (Tr. 446).  The plaintiff returned to the clinic in January, 2008, when she was seen by a registered nurse-practitioner, and reported a recent worsening of her condition, apparently due to acute sinusitis.  (Tr. 444).  No functional restrictions are suggested.

A rheumatologist, Dr. Haider Abbas, also examined the plaintiff in January, 2008, on referral from Dr. Beck, and found 18 out of a possible 18 fibromyalgia tender points.  He felt that she did not have clinical evidence of an inflammatory joint disease such as rheumatoid arthritis, and there were no laboratory studies to

---

[1] As of the December 18, 2007 examination, the plaintiff weighed 246 pounds. (Tr. 423).  Her height was 61 inches according to Dr. Owen.  (Tr. 318).

11

08-387  Darcy Marie Talbert

confirm the presence of the condition of fibromyalgia.[2]  Dr. Abbas encouraged regular low impact aerobic activities and "cognitive behavioral therapy," along with an evaluation for sleep apnea.  (Id.).

The plaintiff received further treatment from Dr. Beck and other staff members at the Health Department in February and March, 2008, for complaints of numbness in the left hand and fingers and new pain in her lumbar area which radiated to her legs.  (Tr. 505, 508).  An MRI of the cervical spine on March 27, 2008 showed disc bulging at several levels, while a lumbosacral spine MRI showed a herniated nucleus pulposus at the L2-L3 level and a posterior disc bulge at L5-S1.  (Tr. 499).

Dr. Beck wrote a letter addressed "to whom it may concern" on April 17, 2008, repeating the findings of the MRI reports and noting that the plaintiff had appointments to see a neurologist and a neurosurgeon.  (Tr. 510).  She stated that more specific information regarding her patient's prognosis and treatment options should be available after the reports were received, but until then "I think that working for her until her new issues are addressed would be very difficult if not impossible."  (Id.).

---

[2] Blood testing in December, 2007 for Dr. Beck did show an elevated sedimentation rate.  (Tr. 449).  The significance of the finding is uncertain since it does not appear that any of the physicians ever commented on it.

08-387  Darcy Marie Talbert

Therefore, both the one-time examiner and the plaintiff's treating physician found much more severe restrictions than the ALJ.  The hypothetical question is supported only by the opinions of the state agency reviewers, who did not have all of the evidence available for review.  The opinion of a treating physician is entitled to great weight if it is supported by sufficient objective findings.  See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  The opinion of a treating physician can be discounted, but the ALJ must give "good reasons" for doing so.  Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

In the present case, there is no mention of Dr. Beck's April 17, 2008 letter in the ALJ's decision.  As a result, even if Dr. Beck's opinion that working would be "difficult if not impossible" is not entitled to controlling weight, no good reasons were provided for discounting it.  This factor alone would require remand pursuant to Wilson.  The ALJ did address Dr. Beck's earlier functional restrictions, stating that they were given little probative weight because they were "totally inconsistent" with the objective medical evidence, the doctor's treatment notes, and the claimant's activities of daily living.  (Tr. 17).  He also noted that Dr. Beck's assessment would allow for sedentary level work.

While any limitations in Dr. Beck's assessment due to breathing difficulties could reasonably be discounted in view of the plaintiff's normal pulmonary function testing and the opinion of Dr. White, a specialist, that her condition was not

13

08-387  Darcy Marie Talbert

progressing, it is not clear that restrictions due to fibromyalgia were baseless.  The ALJ found this condition to be "severe," and the presence of fibromyalgia tender points was confirmed by both Dr. Beck and Dr. Abbas.  Nor is the restriction on walking and standing necessarily belied by the plaintiff's activities of daily living.  She described having difficulty performing household chores and keeping up with her personal hygiene, and felt she could walk only one-half of a block and stand for 15 minutes.  She would shop for groceries only once a month and was unable to mop or sweep.  (Tr. 44-7).  She had also stopped attending church.  (Tr. 49).  Her life activities as she described them are not, therefore, "totally inconsistent" with Dr. Beck's assessment.

As for the issue of Dr. Beck's assessment allowing for sedentary work, it is true that when the VE was shown the assessment she responded, "It appears she would be limited to sedentary work."  (Tr. 60).  However, the ALJ did not identify any sedentary jobs or provide job numbers.  It is not sufficient for a VE to testify simply that a plaintiff is capable of sedentary level work; rather, there must be testimony that the claimant has the vocational qualifications to perform specific jobs.  <u>O'Banner v. Secretary of Health, Education, and Welfare</u>, 587 F2d 321, 323 (6th Cir. 1978) (citation omitted).[3]

---

[3] The plaintiff asserts in her brief that sedentary work requires an individual to stand for eight hours in an eight-hour day, but the actual figure is about two hours. Social Security Ruling (SSR) 83-10, p. 5; SSR 96-9p, p. 6.

08-387  Darcy Marie Talbert

Finally, the court briefly notes that the plaintiff is correct in saying that the ALJ did not properly consider the plaintiff's obesity as provided by SSR 02-01p. This ruling indicates that the Commissioner's Listings "remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," and obesity's effects must be considered not only under the Listings but also when assessing a claim at other steps of the sequential evaluation process. Evaluation of obesity requires "an individualized assessment of the impact of obesity on an individual's functioning." Kennedy v. Astrue, 247 Fed. Appx. 761 (6th Cir. 2007).

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 23rd day of July, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**